Good morning, Your Honors. May it please the Court, Ms. Alaniz. I represent Yudeluis Jimenez-Elvirez, who was accused of conspiring to transport aliens in Laredo, Texas, on or about October 7, 2015. The first issue that I would like to present to the Court today is regarding Issue 1 and 2 in my brief, which is the insufficiency point. Issue 1 relates to the issue of conspiracy, and Issue 2 relates to the issue of aiding and abetting. In this case, my client was charged with conspiring to transport aliens and with aiding and abetting the transport of aliens. After a jury trial, the jury found him guilty of conspiring and also guilty of aiding and abetting in the transportation of aliens. The issue in this case revolves around the sufficiency of the evidence and what, in fact, was for them to conclude that there was evidence beyond a reasonable doubt that my client had conspired, voluntarily joined the conspiracy, and acted in furtherance of the conspiracy, and also the aiding and abetting charge, which requires him to purposely participate in the crime and seeking by his actions to make it succeed. And so, in this case, on Highway 59, 44 miles east of Laredo, Texas, he was driving a black tractor-trailer, and he was the sole occupant of the tractor-trailer. He was also pulling a trailer. Agents didn't notice anything out of the ordinary, so they let him through. When they let him through, agents saw that there had been an alert to the license plate of this tractor-trailer and caught their attention. A few minutes later, a black Tahoe arrived at the checkpoint, which was being driven by my client, Mr. Jimenez-Selvitas. As I understand it, the tractor-trailer was the identical same tractor-trailer that had been involved with a different offense on June 30th? That's correct, Judge. The black tractor-trailer. And is your — is it your contention that's just a coincidence, or … ? Yes. Yes. I mean, he used it. He admitted he used it, but he didn't — on this occasion, he wasn't driving it. He wasn't using it. He didn't see the aliens in there. There was no way for him to identify the aliens. But the jury could — could decide that that wasn't — wasn't a coincidence, right? Well, I think that if the jury had other evidence to link to the prior offense, then they could — it could support beyond a reasonable doubt. But the Court was very specific when it instructed the jury in the typical 1.30 pattern jury instruction about what it could do in considering other — other evidence. The Court told the jury, you cannot consider the acts charged from the prior events to determine if he committed the acts charged in the indictment. First, you need to find that the defendant committed the acts charged in the indictment, and you can consider the prior offense to determine state of mind, mode of opportunity, acted according to plan and preparation, or committed the acts by accident or mistake. So — so I just want to be clear. So now you're not challenging the Court's determination that that prior offense was admissible. You're agreeing that that limiting instruction was sufficient. Yes, to an extent. And — and I will explain that one in — if the Court would allow me in a — in a little bit. This case centers around what evidence the agents testified to to the jury so that they could infer, other than his prior conviction, because in this case, that's what this was about. The government in their opening statement pointed out where there's smoke, there's fire, causing the Court to have to instruct the jury that that was improper. You have to take the facts of this case and apply them and then determine if there's guilt beyond a reasonable doubt. The first agent, Agent Bomer, testified that there was nothing distinctive about the behavior of Jimenez-Elvira for him to determine whether he was involved with the black tractor trailer or whether he had knowledge of the aliens that were in the black tractor trailer. They let him go. Agent Martinez testified that he was the one who was reading the license plate reader, and he noticed that there was an Iron Horse logo on the black tractor trailer. He decided to follow the black tractor trailer after it had left the checkpoint, and it took him 10 minutes to catch up to the trailer. When he caught up to the trailer, he immediately knew that it was the same tractor trailer that he — that he was looking for, and he got behind the trailer, but Mr. Elvira was directly behind the tractor trailer. When he first caught up to the tractor trailer, Mr. Elvira was behind him in the black Tahoe. Mr. Elvira never changed positions, never made any evasive actions, never took any evasive actions. He maintained the same position from the moment that Agent Martinez caught up to the tractor to the moment where he decided to turn on his emergency lights and Mr. Elvira was pulled over. Agent Martinez testified that he thought that my client was driving in tandem and that he was a scout, and when the government asked him, what does a scout do, he says they try to distract law enforcement. He says the typical behavior for a scout was a scout will perform various driving infractions, drive into incoming traffic, move vehicle around, press the brakes, trying to get focused on them and not the tractor. And so in this case, my client never did any of those actions to signify that he was acting as a scout. He was behind the tractor trailer from the moment he caught up to him to the moment that he pulled him over. He took no evasive actions as the agent had testified was typical behavior for a scout. He followed so close as to obscure the clear view of the license plate, and even though the tractor trailer wasn't going all that fast, your client made no effort to pass. He stayed right behind, which could be interpreted as being a scout or traveling in tandem. Judge, we're not denying that they were traveling together. And, in fact, they told the jury in opening statements that they were traveling together. The allegation was that he wasn't participating and he wasn't taking any action to further the conspiracy or the aiding and abetting charge. In fact, when he says that he was obstructing the license plate when the agent caught up to the black tractor trailer, he testified that he already knew he was going to pull it over, but he never turned on his emergency lights. He was in an unmarked patrol unit with no markings, no reflectors, no lights on the outside. He had a light bar on the inside, an emergency light, but he testified that he did not know if Mr. Elviris had seen the light, and he never showed Mr. Elviris a badge or anything to signify that he needed to pull over. In fact, it was 10 o'clock at night on Highway 59, which is a rural road that has no lighting. He said that it was pitch black, and he admitted that he did not know if Mr. Elviris knew he was law enforcement. So he says, then when he turned on his emergency lights, what a normal scout will do is pump the brakes so that the agent can hit him from behind or cause some type of other action, reactive behavior. In this case, when the agent turned on his lights, Mr. Jimenez Elviris immediately pulled over to the shoulder, not in front of him trying to cause an accident. He said, I'm not saying that in this case he was trying to get us to crash. That's coming from the agent himself. So he admitted that he didn't take the normal behaviors that a scout does. In cross-examination, he also identified that there was no insignia, no law enforcement signs. He did not know if he could see him. He asked him, well, what's the problem with him not relinquishing his position? He says, well, he should have driven to the shoulder and allowed me to pass. And the defendant's attorney asked him, well, how did, why? He says, isn't it illegal to pass on the shoulder? He said, yes, it is illegal to drive on the shoulder and allow somebody to pass. And he admitted that not every driver will allow somebody to pass them because driving on the shoulder is an infraction. And he also admitted on cross-examination that he took no evasive actions. He did not try to swerve. He did not try to run off the pass. He did nothing other than the whole time was behind the tractor-trailer, and he took no evasive actions. So there was no evidence that my client was impeding him to pull him over because when he turned on the lights, which most law enforcement do, he immediately pulled over. And because he took no action, there was not enough evidence to show that he purposely assisted the conspiracy or that he purposely participated in the conspiracy in some fashion to make it work. And so, therefore, under the facts of this case, there was insufficient evidence. The material witnesses — yes, sir? Mr. Morello, you're also contesting the admissibility of the prior case or the prior situation. But if that is admitted, and I'm not saying it is yet or not, but if that's admitted, doesn't that make the government's case stronger? And would you still argue sufficiency of the evidence if this Court were to determine that that prior incident was admissible? It seems to me that the jury might have used that for knowledge, intent, and would that make the conviction stronger if this Court were to decide that that prior incident was admissible. All the cases cited by the government and cited by the defense about the 404B material is that it could be used for other purposes to show motive, intent, opportunity, lack of mistake, et cetera. But it cannot be used by itself to prove guilt because then it would be used for other purposes. In this case, the cases cited by myself, including United States v. Gardea, Carrasco, Molasco, Rosas, and Maltos, all have something other than a prior conviction. They have material witnesses saying, I saw this gentleman at the loading dock. I saw him loading us. He told me to hide. He was there when the drugs were being loaded. In this case, we don't have the other evidence to link the two and make it sufficient. Simply having the prior offense doesn't raise the facts to the sufficient point where you would have a jury decide beyond a reasonable doubt that he participated in the event and purposely sought to make it work or that he even knew that the aliens were behind the 18-wheeler. What we have is somebody driving a vehicle behind a tractor-trailer. The tractor-trailer knew that he had aliens in the car, but Mr. Eudelvis Jimenez was in a separate car. This is not a case where Mr. Eudelvis was in the car and the aliens were sitting inside and he would have claimed, I didn't know. The prior bad act evidence could have been used to show that his knowledge that the aliens were in there, but in this case it's different. There's no aliens in his car and he took no actions that anybody testified to that would lead to believe that he was involved in the crime. The material witnesses also said that they only identified the driver of the 18-wheeler. None of them identified my client. None of them identified that there were any conversations by anybody. Nobody identified that they had made arrangements or that they were loaded by my client at a warehouse or that he was even there. So in essence, what it turned out to be was that it seems that the jury relied primarily on the prior bad act evidence, and the government argued the prior bad act evidence several times to my client's detriment, and the court had to instruct the jury that they could not to show motive, intent, or opportunity. I would like to also talk about issue number four, which is the issue of he received a two-level enhancement based on a prior conviction. And so, as Judge Smith asked me earlier, when my client was arrested on October 7, 2015, in case number 1313, he had previously been arrested on October 7, 2015, in case number 829. That's cited at Record Excerpt number 6. In the morning of October 7, 2015, my client entered a guilty plea before a magistrate court, where the magistrate court accepted the plea, and he did a report and recommendation on October 8, docket number 33 in Record Excerpt 6, and then he issued . . . the court, the report and recommendation . . . issued its order adopting the report and recommendation on October the 23rd in docket number 39. Under section 2L1.1b3, my client could have received a two-level enhancement for committing part of the instant offense after sustaining a conviction, but as the court knows, under Rule 11 and under the magistrate's authority, which is 28 U.S.C. 636b1a, b, and c, the magistrate court cannot enter a finding of guilt. It can only recommend to the district court that it accept a plea, and upon the district court accepting the plea, then the conviction becomes final. Now, this point was not raised in the district court. Is that right? That's correct. So we would have the plain error standard of review, which, as you know, is pretty strict. Yes. It's a plain error standard of review, and this Court in United States v. Martinez-Rodriguez held that a difference of 18 months is sufficient enough to constitute some substantial rights being affected and that the error seriously affects the fairness and integrity of reputation. And this Court reversed the sentence in that case, saying that 36 months different was too much of a difference and that it would protect the error because it was seriously affecting the fairness, and it reversed. It also cited . . . You've saved time for rebuttal. Thank you, Judge. Ms. Alanis. Good morning. May it please the Court, Amy Alanis for the United States. I would like to address a sufficiency question first and take the Court through the evidence because I think a couple of salient points have been left out. On that evening, October the 7th, at the Freer checkpoint, this black tractor pulling a white trailer pulls through. The agents don't notice anything unusual about this right away. They check his immigration status. It's fine. They let him go. They have a license plate reader there at the Freer checkpoint that sometimes has what they call a delayed hit. And so it doesn't alert until the tractor-trailer has already pulled off. Immediately behind the tractor-trailer is Mr. Jimenez in a black Tahoe. And I need to mention that the tractor-trailer, both of those vehicles had Florida license plates. Mr. Jimenez's Tahoe also has Florida license plates, although the front plate is missing. So when the agents see the alert, they walk around to the back of his vehicle and they realize this is not the plate that has been alerted to. And they quickly determine that, well, they look at the pictures and they realize this looks like a trailer. It must have been that trailer that just passed through. And the alert told them that it was involved in an alien smuggling incident. So, you know, they eventually let Mr. Jimenez go because, again, they're satisfied that he is a U.S. citizen. Meanwhile, Agent Esteban Martinez jumps in his vehicle and begins to pursue the vehicles. As he catches up to them, I guess he doesn't leave until after Mr. Jimenez has also left in his Tahoe. So he pulls up. As Mr. Vaila mentioned, this is Highway 59 outside of Freer, Texas. It is rural. It's a two-lane highway. There isn't very good lighting. So he pulls up. He says by the time he gets there, both these vehicles are doing 85 miles an hour, and the Tahoe is about five feet from the back of this large tractor trailer. And he finds that very suspicious. He makes several maneuvers. He's trying to get behind the trailer to check the license plate to see if it is indeed this license plate on which there has been an alert. And he flashes his high beams several times, and the Tahoe does not budge. It just keeps going right behind the trailer. On cross-examination, Agent Martinez testified that while he did not have Border Patrol insignia on his vehicle, which I believe was a Ford F-150 pickup, in the back of the pickup was a large cage where his canine would be placed when he was transporting it. He said this structure was reflective. And in his opinion, anybody would know this was a law enforcement vehicle. That's what he said on cross-examination. Meanwhile, his efforts to get behind and view this license plate are unsuccessful. He does then activate the blue and red emergency lights. Jimenez immediately brakes and pulls over and then brakes. And then Agent Martinez continues on and does stop the tractor trailer. At trial, of course, as has already been discussed, the trial court admitted the evidence of Mr. Jimenez's prior alien-smuggling offense. That occurred just three months before. He was driving that same tractor-trailer rig. The trailer had the same license plate. The tractor had a different license plate at that time. And both of those vehicles were registered to the co-defendant, Mr. Gallo, the co-defendant in this case. I just want to be clear. When you say tractor-trailer, you're calling the tractor one vehicle and the trailer another? Correct. And they both have a license plate. All right. And this was litigated extensively pre-trial. And what Judge Marmolejo decided was she said, I basically think this is intrinsic. I don't think Rule 404B applies. But even if 404B does apply, I'm going to let it in because it satisfies all the requirements. Did she give an instruction? She did. She did, Your Honor. She gave an instruction at the time this evidence was admitted. And she gave the 404B instruction again during her final instructions to the jury. So they were ---- The defense was mere presence. I didn't know what was going on. I might have been there, but I didn't have any idea what was going on. Right. I just happened to be here in this place just driving along, minding my own business. That was his defensive theory. So when you put all of this together, there is certainly sufficient evidence to find that Mr. Jimenez was a knowing participant, both in the conspiracy and in the substantive offenses. I want to touch on the ---- I just have one question. It's not related to this, but when a vehicle is involved in an illegal activity, isn't there some effort to seize or forfeit the vehicle? In this case, they gave the tractor-trailer back to the owner? They did. And I wondered about that, too, so I investigated. And this is briefly addressed in the PSR. What happened the first time when he gets caught driving Mr. Gallo's big rig, of course, they go to Gallo and say, what's the deal? And Mr. Gallo is the owner or was the owner of a ---- some type of trucking business there in the Rado. And he said, look, Gallo, he works for me as a mechanic. He had no authority to drive this truck. He just did that on his own. And he actually had one of his employees, who was the dispatcher for the trucking company, she also backed him up. So at that point, I guess they felt like they didn't really have any evidence against Mr. Gallo. Mr. Jimenez had not given a statement and inculpated him, so they just let him go and they gave back the trailer, because they felt at that point they just had no evidence to link him to the earlier. So that's what happened. Of course, in the second incident, Mr. Gallo was actually driving the tractor-trailer. So I wanted to talk next about Issue 4. This is the two-level enhancement that you get if you committed any part of the instant offense after sustaining a conviction for a felony immigration offense, which, of course, includes alien transporting. His theory now on appeal, of course, this wasn't raised in the trial, was that, well, that's not a final conviction at the time when I committed my new offense, so you can't, I shouldn't have gotten that enhancement. And I would argue, under plain error, that's simply not enough. There's nothing, there's no smoking gun in the guidelines that says this has to be a final conviction. And, of course, that's in a different context, but — Kennedy. I understand that under plain error review, you have to satisfy all four prongs, but on the first prong, does the government take the position this was or was not error? Kovner. I don't believe it, Your Honor. Kennedy. Just looking at prong one. Kovner. Just error? I don't think so, Your Honor, given this record and the lack of objection. Kennedy. Well, no, that's — once we're at plain error review, prong one is was it or was it not in plain? Under prong one, a magistrate judge can't enter any kind of a final order, can only take a plea. So I really don't see — you may still win on the other prongs, but as to prong one, you're telling me that the government's position is that this was — this was not error, that the magistrate judge had the — this constituted a conviction, even though a magistrate judge can't enter that kind of a — of a judgment in a criminal case. Kovner. Well, Judge, I — the problem is that the case law is just not clear. We don't have any case law that applies. Kennedy. I agree. I agree. It's a res nova issue, and I'm — I'm trying to — you're an officer of the court, and I'm trying to figure out, is the United States telling us that this was not error, that somehow this magistrate judge, whatever the magistrate judge did, constituted a — a conviction? Kovner. Well, I — we know that he certainly had the ability at that time, the point in time, to withdraw his plea. I think the case law is very clear on that point. So, no, it wasn't final in that sense. Well, I'm — and I don't mean to belabor the point, but I guess I do, because I think as I view it, and what the law is, is that the magistrate judge can actually hear the plea. I mean, the defendant can enter his plea before the magistrate judge. He agreed. He signed a written agreement to allow that judge to take his plea. And that's what he did before the magistrate judge. But then, in order for that to be a final conviction, the plea then has to be accepted, because a judge could always hear a plea. A defendant can enter it, but the court could decide not to accept the plea. So it has to be accepted. This is true. And that can only happen by an Article III judge. Yes. That is true. All right. So I guess I will say that if this were preserved error, yes, we would have error. But let me move on to two. I don't think it can be clear and obvious. Well, you're right. I mean, our case law says very forcefully that a race nova issue, an issue that has not been decided in this circuit, can't be plain for purposes of the second prong. So you're in a much stronger position on prong two than you are on prong one. Yes. I will agree with that. Also, as to prong three on harm, you know, this Court has said that just the fact that you might have had a larger sentencing guideline range may not be enough. And I'd like to point out, in this particular case, he got 97 months on both these offenses. So and on the first offense, he pled guilty, he's waived his appellate and post-conviction rights, so, you know, he's still going to be doing 97 months, so it's hard to see the harm here. And, of course, on the fourth prong, I'd like to point out on all the plein air issues here, the fourth prong simply hasn't been addressed. And this Court has often cited recidivism as a reason that it should not exercise its wide discretion under the fourth prong. And I think it's also the case that it should not be exercised under the fourth prong. I'm sorry, Judge? Will a substantial injustice occur if we uphold the sentence? I don't think so, Your Honor. When you look at the facts here, the defendant went in front of a Federal judge, admitted his guilt. He goes out that same day and does the exact same thing again with the same truck. I mean, I think this is recidivism at its finest, and it's hard to see how there is any manifest injustice here. And I think that's all I had on number four. The remaining issues, I believe I would like to just rely on my brief, unless the Court has any questions about that. All right. Thank you, Ms. Alanis. Thank you. Bailiff, you've saved time for rebuttal. Your Honors, in regard to the sentencing enhancement regarding the questions about the error was plain, the argument to the Court is that the error was plain because the word conviction can only have one meaning under the law, and the law requires that the district court accept the plea for it to be a final conviction. So there is no case law because this issue has never been addressed before, but the statute itself is clear, and the statutes that I've cited to the Court is clear of what a conviction is. Regarding the third and fourth prong, the government cited a case of United States v. Martinez, Rodriguez, and in that case, the Court addressed the third and fourth prong, and the Court stated that the application, the incorrect application of a guideline range is enough to show, to meet the third prong of the substantial rights affected. And then as to the fourth prong, the Court said that it cited United States v. Price, where the Court reversed and remanded when there was an 18-month difference in the sentence that had been calculated by the Court. So this Court, in United States v. Price, found that that was sufficient to warrant the fourth prong, which is to correct something that has gone wrong, to protect the integrity of the Court. And so that's cited in my brief as well. In that case, the Court also — the government argued that there was recidivism involved, and the Court pointed out that in the cases cited by the government, all those cases were different because it did not involve a disparity in the sentencing guidelines. And they said in this case, it does involve a disparity in the sentencing guidelines. Therefore, irrespective of the fact that we have a recidivism issue, if you don't apply it correctly, it meets the third and fourth prong of the plenary review. Outside of the difference in sentence between the guidelines, is there some other factor that would favor overturning the conviction that is a substantial injustice or manifest injustice, unfairness that would challenge the integrity of the judicial system beyond the sentence being larger with the guidelines that were applied versus not applying those guidelines? I mean, we have a technical violation, if it is a violation between a magistrate taking the guilty plea and turning it over to the district judge, outside of the additional sentence that maybe the magistrate couldn't do it. Where is there an attack on the integrity of the judicial system here? It seems like he pled guilty, whether it was before a magistrate or a district judge, even though legally there might be a question as to whether the magistrate could accept the guilty plea. That's correct, Judge. He did plead guilty, but the fact is that there was no conviction, and that enhancement provision required a conviction to be applied. He must have been convicted at the time of the commission of the second offense, and he had not been convicted yet. Under the case law of this circuit, if there is a disparity, even a 15-month disparity, that's 15 months extra that my client is going to have to sit in jail if this court finds that there is sufficient evidence, and I would argue that that would be sufficient for the court to want to correct. He's not arguing that it wasn't his intent to be convicted of that. He pled guilty. That's correct, Judge. He pled guilty. And it's just fortuitous that this occurred without the district court having accepted that plea. Isn't that right? Yes. If the district court would have taken the plea, there would be no issue. It would be a conviction. That's correct. The last thing I want to point out in rebuttal is the case of United States v. Madrid, which is a case that was cited by the government regarding a prior conviction, 404B, and the application as to an aiding and abetting or a transporting charge. In that case, a defendant had been transporting aliens in the car, and he testified that he did not know that they were illegal aliens, so they brought in a prior confession that he made that he had transported aliens in the past. And even in that case, this court talked about what the prior confession does, and it said that the difference was that the aliens testified that they had met Madrid. The aliens testified that Madrid agreed to transport them, and then Madrid only said he had picked them up on the side of the highway as hitchhikers. So in that case, the court found that in addition to the prior offense, there was corroborating testimony that he had participated by the witnesses themselves. In this case, there is no corroborating evidence that my client participated and knowingly sought by his actions to make the alien smuggling activity succeed. Thank you. Roberts. Thank you, Mr. Phelan. Your case is under submission.